Affirmed and Memorandum Opinion
filed August 23, 2011.

 

In The

Fourteenth
Court of Appeals



NO. 14-10-01007-CV



James
Joseph Rooney,
Appellant 

v.

sandra
rooney, Appellee 



On Appeal from
the 387th District Court

Fort Bend
County, Texas

Trial Court
Cause No. 08-DCV-162786



 

MEMORANDUM
OPINION

In this suit affecting the parent-child relationship, appellant
James Joseph Rooney appeals from a portion of the trial court’s 2010 Order in
Suit to Modify Parent-Child Relationship raising James’s child support for his
three children from $2,000 to $3,710, an amount that exceeds the statutory
guidelines set forth in the Texas Family Code.  In five issues, James contends
that the trial court abused its discretion in entering the Order because
(1) appellee Sandra Rooney did not prove a material and substantial change
in circumstances or that the children have unmet needs; (2) the trial court
considered Sandra’s standard of living in awarding child support and did not
set forth its reasoning for awarding child support above the statutory
guidelines; and (3) the award of child support constitutes a prohibited
double recovery for Sandra.  Sandra counters that this court does not have
jurisdiction to hear the appeal because James consented to entry of the Order. 
We hold that we have jurisdiction over the appeal and affirm.

Background

James and Sandra divorced in 2005.  They have three
children of the marriage, and James has one minor child from a previous
marriage.  Under the divorce decree, to which the parties agreed, the court
ordered James to pay Sandra monthly child support of $2,000 from October 1,
2005 forward.

James filed this lawsuit seeking modification of several
provisions of the divorce decree, regarding possession and access, choice of
nannies, life insurance policies, and the children’s passports, and seeking a
permanent injunction.  At trial, James requested dismissal of his request for
injunctive relief, which the trial court granted.  Sandra brought a
counterclaim asking the court to increase child support.  

The case was tried to the bench.  During trial, both
parties agreed to the modifications sought by James; thus, the primary issue at
trial was child support.  Sandra testified that the children’s needs had increased
since the divorce decree was entered as the children had gotten older.  James’s
counsel admitted at trial that James makes more than $50,000 per month which
was a material and substantial change in circumstances.  Sandra sought child
support from James at trial of $10,000 per month plus 100% of the uninsured
medical expenses for the children.  Sandra presented as an exhibit a chart
entitled “Allocation of Cost Needs of the Children,” which she testified
represented the children’s monthly expenses, totaling $14,129.13.  The document
also allocated monthly expenses between Sandra and the children.  The trial
court found that the children’s needs were $5,366.87 per month, including $3,313.74
over the amount of child support computed by the percentage guidelines set
forth in the Family Code, and that James and Sandra were each responsible for
paying 50% of the children’s excess needs, or $1,656.87.

The trial court found true the material allegations in
both James’s petition and Sandra’s counterpetition and signed the Order, which,
among other things, requires James to pay Sandra child support of $3,710 per
month[1]
and includes findings, in pertinent part, that James has net resources of
$50,000 per month, the amount of Sandra’s net resources per month is unclear,
and both Sandra and James are expected to support the children.  The court
specified that the amount of child support varies from the statutory guidelines
because, among other things, James earns above guideline income, Sandra is
intentionally unemployed or underemployed with an unknown income and her
expenses are “grossly overstated,” and the shortage of the children’s needs
above guideline support is $3,313.74.  The trial court also awarded Sandra
retroactive child support of $10,570, but applied a credit of $5,290.64, and
ordered James to pay the balance of $5,279.36.

The trial court subsequently entered Additional Findings
of Fact and Conclusions of Law.  The trial court found, among other things: 

·                   
To support her increase in child support, Sandra testified, in
part, to spending $400.00 for “pole dancing classes”; she has been unemployed,
except for a brief period, since 2008; has made limited effort to become
employed; currently conducts a dog breeding business in her home; spends
$1,300.00 monthly for daycare even when she is at home during the children’s
summer vacation; has not paid the $3,859.16 monthly house payment in more than
a year; the children’s needs totaled in excess of $14,000 monthly; and
requested $10,000.00 monthly child support.

. . . .

·                   
Mickey[[2]]
pays other expenses of the children and of Sandra that are not reflected in the
child support calculations.

. . . .

 

·                   
Even though Sandra has not paid house payments and only
sporadically paid other necessities such as utilities, the children still need
the benefit of necessaries[.]

Jurisdiction

We address as an initial matter Sandra’s contention that
this court lacks jurisdiction over the appeal because James approved the Order
as to form and substance, thus, as Sandra asserts, making the Order a consent
judgment.  For a judgment to be considered an agreed or consent judgment, such
that no appeal can be taken therefrom, either the body of the judgment itself
or the record must indicate that the parties came to some agreement as to the
case’s disposition; simple approval of the form and substance of the judgment
does not suffice.  DeClaris Assocs. v. McCoy Workplace Solutions, L.P.,
331 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  Here,
there is no indication in the body of the Order or otherwise in the record that
the parties agreed to the case’s disposition with regard to child support.[3]  In fact, whether
child support should be increased and in what amount was vigorously contested
throughout the proceedings, including trial.  See id.  Consequently,
James did not abandon his right to appeal by signing the Order, and this court
has jurisdiction over the appeal.  See id.

Abuse of Discretion

In five issues, James argues that the trial court abused
its discretion by ordering child support above the statutory guidelines in the Family
Code because (1) Sandra did not present evidence of a material and substantial
change in circumstances or that the children had unmet needs, (2) the trial
court improperly considered Sandra’s lifestyle in increasing child support and
did not specifically delineate what needs it credited to support the child
support award; and (3) the child support award constitutes a double recovery to
Sandra.  

We review a trial court’s determination of child support
under an abuse-of-discretion standard.  Newberry v. Bohn-Newberry, 146
S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.); Evans v.
Evans, 14 S.W.3d 343, 345–46 (Tex. App.—Houston [14th Dist.] 2000, no
pet.).  A trial court abuses its discretion when it acts arbitrarily,
unreasonably, or without reference to any guiding rules or principles.  Newberry,
146 S.W.3d at 235.  Under the abuse-of-discretion standard, legal and factual
sufficiency challenges are not independent grounds of error, but are relevant
factors in assessing whether the trial court abused its discretion.  Id.;
Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.]
1996, no writ).  When an appellant alleges the trial court abused its
discretion because the evidence is insufficient, this court employs a two prong
test.  Newberry, 146 S.W.3d at 235.  First, we must ask whether the
trial court had sufficient information on which to exercise its discretion, and
second, we determine whether the trial court abused its discretion by causing
the child support order to be manifestly unjust or unfair.  Id.; Evans,
14 S.W.3d at 346.

The trial court does not abuse its discretion when it
bases its decision on conflicting evidence or when some evidence of a probative
and substantive character exists to support the child support order.  Newberry
146 S.W.3d at 235; Zieba, 928 S.W.2d at 787.  Conversely, a trial court does
abuse its discretion when there is no evidence to support its decision.  Anderson
v. Carranza, No. 14-10-00600-CV, 2011 WL 1631792, at *4 (Tex. App.—Houston
[14th Dist.] Apr. 28, 2011, no pet.) (mem. op.).  In conducting our review, we
view the evidence in the light most favorable to the trial court’s decision and
indulge every reasonable presumption in favor of the trial court’s judgment.  Newberry,
146 S.W.3d at 235.

1.      Material
and Substantial Change of Circumstances

In his first issue, James argues that the trial court
abused its discretion by modifying the child support order because Sandra
failed to show a material and substantial change of circumstances since entry
of the divorce decree.  Sandra counters that James conceded a material and
substantial change of circumstances and, regardless, Sandra presented sufficient
evidence showing the children’s needs have increased since the divorce.  We
agree with Sandra.

A court may modify a child support order “if the
circumstances of the child or a person affected by the order have materially
and substantially changed since . . . the date of the order’s rendition.”  Tex.
Fam. Code § 156.401(a)(1)(A).  To determine whether modification of child
support is warranted, the court must examine and compare the circumstances of
the parents and any minor children at the time of the initial order with the
circumstances existing at the time of trial in the modification suit.  In re
D.S., 76 S.W.3d 512, 520 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  The
record should contain both historical and current evidence of the relevant
person’s financial circumstances.  London v. London, 192 S.W.3d 6, 15
(Tex. App.—Houston [14th Dist.] 2005, pet. denied).  But a court’s
determination as to whether a material change of circumstances has occurred is
not guided by rigid or definite rules and is fact-specific.  In re A.L.E.,
279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  A
breakdown of the children’s expenses at the time of the initial order and at
the time of the modification hearing is not necessary to show a material and
substantial change of circumstances when evidence shows a substantial increase
in the designated expenses for the children, in the absence of showing any
decrease in expenses.  Arndt v. Arndt, 685 S.W.2d 769, 770 (Tex.
App.—Houston [1st Dist.] 1985, no writ); see also In re Marriage of Hamer,
906 S.W.2d 263, 267 (Tex. App.—Amarillo 1995, no writ) (acknowledging that as
children grow into teenagers, their expenses increase); Sheldon v. Marshall,
768 S.W.2d 852, 856 (Tex. App.—Dallas 1989, no writ) (“[A]n increase in the
needs of Daughter is sufficient to justify an increase in support if Father is
able to pay.”).  

A judicial admission is a formal waiver of proof usually
found in pleadings or the parties’ stipulations.  Aguirre v. Vasquez,
225 S.W.3d 744, 756 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  A judicial
admission is conclusive on the party making it and relieves the opposing party
of its burden of proving the admitted fact.  Id.  The admission must be
clear and unequivocal.  Holy Cross Church of God in Christ v. Wolf, 44
S.W.3d 562, 568 (Tex. 2001).  Any fact so admitted is conclusively established
in the case without the introduction of the pleading or presentation of other
evidence.  Aguirre, 225 S.W.3d at 756.  It not only relieves the
opposing party from proving the admitted fact but bars the admitting party from
disputing it.[4] 
Id.  The policy underlying this rule is that it would be unjust to
permit a party to recover after it has negated its right to recover by clear,
unequivocal evidence.  Id. at 756–57.

At trial, James’s counsel agreed numerous times to
stipulate that James made over $50,000 per month at the time of trial.  James’s
counsel also clearly, unequivocally, and adamantly asserted that this fact
showed a material and substantial change in James’s circumstances and Sandra
needed to focus only on proving the needs of the children:  “But the case law,
Your Honor, this is the situation, has there been a material and substantial
change.  It’s their burden.  We stipulate that there has been.”  In objecting
to the admission of evidence including James’s bank statements and income, James’s
counsel stated that Sandra’s counsel “has finally agreed to our stipulation
that our client makes over $50,000 a month in child support.  And under 156
under modification, once that’s established, then the burden shifts to
proving needs . . . .”  (Emphasis added.)  We hold that, under these
circumstances, James judicially admitted a material and substantial change in
his financial circumstances, relieved Sandra of proving that fact, and is
barred from disputing it.[5] 
See Aguirre, 225 S.W.3d at 756; see also Baucom v. Crews,
819 S.W.2d 628, 631 (Tex. App.—Waco 1991, no writ) (“Baucom himself pleaded
that a material and substantial change in his circumstances had occurred
sufficient to warrant a decrease in his monthly child-support obligations.  His
pleadings constitute a judicial admission that there has been a substantial and
material change of his circumstances.”).  

Sandra also presented evidence of a material and
substantial change in the children’s circumstances. When the divorce decree was
entered, the children were seven-, four-, and two-years-old.  When the Order
was entered, the children were twelve-, nine-, and seven-years-old, so the two
youngest had grown from pre-school- to school-aged children.  Sandra testified
that as the children have gotten older, their needs have increased.  They are
involved in more extracurricular activities and eat out more often, the cost of
groceries has increased, the children have a greater need for a tutor due to
their special needs,[6]
and gasoline is not only more expensive but there is a greater need for it, as
the children must be transported to their extracurricular activities.  We hold
that the trial court did not abuse its discretion in finding a material and
substantial change in circumstances that would merit an increase in child
support.  See Arndt, 685 S.W.2d at 770.  

We overrule James’s first issue.

2.      Unmet
Needs of the Children

In his second issue, James contends that the trial court
abused its discretion by increasing his child support obligation because Sandra
failed to prove that the children had unmet needs.  Specifically, James
complains about the amount of child support Sandra sought for nanny expenses,
tutorial expenses and private school tuition, birthday parties, extracurricular
activities, over-the-counter medicine, and food and groceries.  Because the
trial court clearly took into account the amount of child support sought,
weighed that against the evidence of the children’s needs, and, finding that
the expenses claimed by Sandra were “grossly overstated,” significantly reduced
the amount of child support awarded as compared to that sought, we decline to
find that the trial court abused its discretion. 

Once the court determines a material and substantial
change has occurred, the extent of the alteration of the amount of child
support also lies within the court’s discretion.  Nordstrom v. Nordstrom,
965 S.W.2d 575, 578 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).  The Family
Code provides a bifurcated analysis in setting child support, depending on
whether an obligor has net monthly resources above or below $7,500.  Tex. Fam.
Code §§ 154.125, 154.126; see Nordstrom, 965 S.W.2d at 579. 
If the obligor’s net monthly resources are below $7,500, the court must apply a
presumptive award based on a percentage of the obligor’s net resources and the
number of children.  Tex. Fam. Code §§ 154.125.  But Family Code section
154.126(a) grants the court discretion to order additional amounts over and
above the presumptive award when the obligor’s net monthly resources exceed
$7,500, depending on the income of the parties and the proven needs of the
child.  Tex. Fam. Code § 154.126(a); see also London, 192 S.W.3d at 15. 
If the court awards more than the guideline amount, subsection (b) requires
that the court first determine the proven needs of the child.  Tex. Fam. Code
§ 154.126(b).  If the needs of the child exceed the presumptive award, the
court must subtract the presumptive award from those needs.  Id.  The
court must then allocate between the parties the responsibility to meet the
additional needs of the child, depending on the circumstances of the parties.  Id.
 However, the court is forbidden from requiring the obligor to pay more than
100% of the proven needs of the child.  Id.

What constitutes “needs” of the child has not been
defined by statute or by case law.  See Rodriguez v. Rodriguez, 860
S.W.2d 414, 417 n.3 (Tex. 1993). However, the needs of the child are not
limited to the “bare necessities of life.”  Id.  In evaluating the needs
of the child, and, thus, the exercise of the court’s discretion in determining
those needs, we are guided by the paramount principle in child support
decisions: the best interest of the child.  Id.  Thus, the Family Code
gives an expansive view of the needs of a child and does not require the trial
court to delineate every need of the child.  Scott v. Younts, 926 S.W.2d
415, 421, 423 (Tex. App.—Corpus Christi 1996, writ denied).  Rather, the court
is required only to state specific reasons why the application of the
guidelines is inappropriate.  Id. at 423.  The managing conservator is
generally in the best position to know the child’s needs, and the trier-of-fact
is the sole judge of the credibility of the witnesses and the evidence.  Id.
at 421.  Estimates and projections of future expenses and needs of the child
are as relevant and probative as past and current expenses and needs.  Zajac
v. Penkava, 924 S.W.2d 405, 409 (Tex. App.—San Antonio 1996, no writ).  The
child’s needs should be segregated from those of the parent.  Lide v. Lide,
116 S.W.3d 147, 158 (Tex. App.—El Paso 2003, no pet.).

At trial, Sandra sought to increase James’s
child-support obligation to $10,000 per month plus 100% of the children’s uninsured
medical expenses.  She based her testimony, in part, on a chart she had created
that allocated between the children and her separate expenses in several
categories, such as mortgage payments, housekeeping and nanny expenses,
tutoring, groceries, and other things.  Sandra testified that she relied on
bank statements, which were admitted at trial, and real costs incurred to
determine the monthly expenses of the children as reflected on the chart, which
was admitted at trial.  She also allocated expenses between herself and the
children and explained why she allocated these percentages in the way she did.[7]  Sandra
testified that she did not include her personal expenses in these amounts.  The
trial judge, as the sole judge of the credibility of the evidence presented by
Sandra, was entitled to accept or reject the numbers and percentages allocated
by Sandra.  See Scott, 926 S.W.2d at 421.  

The trial judge found that the expenses presented by
Sandra were “grossly overstated.”  He further found that the children’s needs
were $5,366.87 per month, which is just over half of the expenses sought by
Sandra.  In addition, he ordered James and Sandra to split the cost of the
children’s needs over the presumptive amount so that each is responsible for
$1,656.87 per month, finding that “[b]oth parties are expected to help support
these children.”  

James specifically complains that the following expenses
are not “needs”: nanny expenses when Sandra is unemployed; tutorial expenses
and private school tuition when the children attend public school and certain
tutoring is free;[8]
and expenses for elaborate birthday parties, extracurricular activities,
over-the-counter medicine, and food and groceries.  We note that when the trial
judge decreased the amount of support Sandra sought, he may have disregarded
the great majority of the expenses about which James complains.  Subtracting all
of these expenses from Sandra’s chart—including all of the food and groceries,
extracurricular activities, and costs of medicine—still leaves a total of
$4,954.39.  The trial court, in its discretion, may have done that and then
added a small amount to account for necessities such as food and groceries, but
in any event, the court deeply reduced the amount of child support sought by
Sandra.[9] 
Even assuming for argument’s sake that we might somehow have reached a
different result than the trial court, we may not substitute our opinion for
that of the trier of fact.  Keeping in mind the best interests of the children,
as we must, we decline to hold under these circumstances that the trial court
abused its discretion in ordering James to pay $3,710 per month in child
support.[10] 
See Roosth v. Roosth, 889 S.W.2d 445, 455 (Tex. App.—Houston [14th
Dist.] 1994, writ denied) (finding no abuse of discretion by trial court in
requiring father to pay $3,000 per month in child support when record contained
evidence that children’s monthly expenses were over $9,000 per month).  

We overrule James’s second issue.

3.     
Sandra’s Lifestyle

In his third issue, James argues that the trial court
abused its discretion by considering Sandra’s lifestyle rather than the
children’s unmet needs in ordering the increase in James’s child-support
obligation.  We have found nothing in the record to indicate that the trial
court awarded child support to supplement Sandra’s lifestyle.

Child support awarded out of an obligor spouse’s net
monthly resources that exceeds the statutory guideline amount must be based
solely on the needs of the child, and the trial court may not consider a
parent’s ability to pay or the lifestyle of the obligee.  See Rodriguez,
860 S.W.2d at 417–18; Tex. Fam. Code § 156.405.  In determining whether
application of the statutory guideline amounts would be unjust or inappropriate,
a trial court must consider “the amount of the obligee’s net resources,
including the earning potential of the obligee if the actual income of the
obligee is significantly less than what the obligee could earn because the
obligee is intentionally unemployed or underemployed.”  Tex. Fam. Code §
154.123(5).  

James complains that because Sandra was unemployed at
the time of trial, she was attempting to obtain more child support to pay her
personal expenses.  James in fact urges us to consider Sandra’s lifestyle in
considering the propriety of the trial court’s child-support award.  But we may
only look to James’s and Sandra’s income (taking into account their actual
earning potential and not just employment status) and the proven needs of the
children to determine whether the trial court abused its discretion by awarding
child support in excess of the statutory guidelines.  Id. §§ 154.123(5),
154.126(a).  

In its Order, the trial court expressly based the child
support award on these two factors—the proven needs of the children and James’s
and Sandra’s incomes—and explicitly disregarded Sandra’s personal expenses.  The
trial court found that at the time of trial Sandra (1) had been intentionally
unemployed or underemployed, except for a brief period, since 2008; (2) had
“grossly overstated” the children’s expenses; (3) spent $400 on “pole dancing
classes”; (4) had “made limited effort to become employed”; (5) spent
$1,300 per month on daycare even when she was at home; and (6) had not made house
payments in over a year.  But the court concluded that “[e]ven discounting
Sandra’s personal expenses,” the children’s needs were substantially more than
the presumptive amount.  And despite Sandra’s unemployment status, the court
ordered Sandra and James to split the cost of the children’s needs over the
presumptive amount.  We hold that the trial court did not increase the child
support award to support Sandra’s lifestyle, but instead based the award on the
proper factors set forth in the Family Code.

We overrule James’s third issue.

4.      The
Trial Court’s Findings 

In his fourth issue, James complains that the trial
court abused its discretion by failing to delineate what proven needs it
credited to support the Order.  We disagree.

The Family Code sets out exactly what the trial court
must include in its findings in rendering a child support order:

[T]he
court shall state whether the application of the guidelines would be unjust or
inappropriate and shall state the following in the child support order:

“(1) the net resources
of the obligor per month are $__________; 

“(2) the net resources
of the obligee per month are $__________; 

“(3) the percentage
applied to the obligor’s net resources for child support is __________%; and 

“(4) if applicable, the
specific reasons that the amount of child support per month ordered by the
court varies from the amount computed by applying the percentage guidelines
under Section 154.125 or 154.129, as applicable.”

Id. § 154.130(b).  The trial court, moreover, is not required to
delineate every need of the child, but is only required to state specific
reasons why application of the guidelines is inappropriate.  Scott, 926
S.W.2d at 421, 423.

Here, the trial court made the following findings in
accordance with the Family Code’s requirement[11]:

1)                
The amount of net resources available to Petitioner per month is
$50,000.00.

. . . . 

3)                
The amount of net resources available to Respondent per month is
unclear.[[12]]

. . . .

6)                
The percentage applied to the first $7,500.00 of Petitioner’s net
resources is 27.38%.

7)                
The specific reasons that the amount of support per month ordered by the
Court varies from the amount computed by applying the percentage guidelines of
section 154.129 of the Texas Family Code:

a.     
Petitioner earns above guideline income,

b.     
Respondent is intentionally unemployed/under employed,

c.     
Petitioner supports another child,

d.     
Respondent’s income is unclear, she claims to have a dog breeding
business,

e.     
Respondent’s expenses are grossly over stated,

f.      
The shortage of the children’s needs after guideline support is
$3,313.74.

g.     
Both parties are expected to help support these children.

The court later supplemented its findings to clarify that James and
Sandra are each responsible for 50% of the children’s proven needs over the
presumptive amount, or $1,656.87, and that James is responsible for a total of $3,710
monthly child support.  We hold that the trial court included all of the
information required by the Family Code to be in its findings in support of the
Order.[13] 
See Roosth, 889 S.W.2d at 452–53 (holding findings were sufficient to
comply with Family Code even though trial court could not compute a percentage
to be applied to net resources, but court specified why order varied from
guideline amount).  The court was not required to provide a breakdown of each
cost showing the dollar amount of each proven need of the children, but was
only required to state why the child support award varies from the statutory
guidelines, which it did.  Scott, 926 S.W.2d at 421, 423.

We overrule James’s fourth issue.

5.      Double
Recovery

In his remaining issue, James argues that the Order
awarded Sandra a double recovery because separate provisions in the divorce
decree from the child-support provision require James to pay $150 per month for
the children’s extracurricular activities and to reimburse Sandra for the cost
of a nanny on weekends when James does not exercise his visitation rights. 
Specifically, James complains that the Order is unclear as to whether these
provisions in the divorce decree remain intact after entry of the Order and
“[f]or fear of contempt,” James is continuing to comply with those provisions.[14]  James has
not preserved this issue for our review because he did not bring this alleged
error to the attention of the trial court by filing a motion for new trial or
motion to modify judgment.  See Ortiz v. Collins, 203 S.W.3d 414, 427
(Tex. App.—Houston [14th Dist.] 2006, no pet.) (observing to preserve complaint
for appellate review regarding alleged defect in final judgment, party must
first present issue to trial court through motion for new trial or motion to
modify judgment) (citing Tex. R. App. P. 33.1(a)).  Thus, he has waived this
issue on appeal.  Id.  

We overrule James’s fifth issue.

Conclusion

Having determined that the trial court did not commit
error, we overrule appellant’s issues on appeal.  The judgment of the trial
court is affirmed.

 

                                                                                    

                                                            /s/                    Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices Frost, Jamison, and
McCally.

 









[1]
This amount represents the total of the amount required under the statutory
guidelines, $2,053.13, plus James’s half of the children’s excess needs,
$1,656.87.





[2]
James also answers to the nickname Mickey.





[3]
The parties did agree to the terms of the Order disposing of other issues in
the case, but these issues are not before us on appeal.





[4]
A party’s testimonial declaration, by contrast, is a quasi-admission that is
not conclusive—the trier of fact determines the amount of weight to be given to
such admissions.  Aguirre, 225 S.W.3d at 756.





[5]
Sandra’s counsel never agreed to the stipulation, seeking to prove that James
made closer to $100,000 per month.  We note that the contents of a stipulation
constitute judicial admissions, Manning v. Enbridge Pipelines (E. Tex.) L.P.,
No 09-10-00205-CV, 2011 WL 2732226, at *5 (Tex. App.—Beaumont July 14, 2011, no
pet. h.), but a party also may make a judicial admission outside of the context
of a stipulation (or a pleading).  See Aguirre, 225 S.W.3d at 756
(acknowledging judicial admissions are usually found in pleadings or
stipulations).  Thus, whether Sandra agreed to stipulate to the amount of
James’s income is irrelevant to whether James judicially admitted a material
and substantial change in his financial circumstances.





[6]
Sandra testified that two of the children have learning disabilities that
necessitate the use of a tutor.





[7]
For example, Sandra allocated the mortgage payment between herself and the
children at 30% for herself and 70% for the children, explaining that if she
lived alone, she would live in her old townhome at a lower cost, and she
allocated groceries at 25% for herself and 75% for the children based on the
fact that she has three children.





[8]
Sandra argues that the children need tutoring in addition to what the public
school provides and that the children would perform better in private school
due to their special needs.





[9]
James urges us to hold that the evidence does not show that the children need
to attend private school.  But the trial court may have disregarded private
school tuition in reaching its determination of the extent of the children’s
needs.  Sandra, moreover, testified that the children would perform better in a
private school environment because of their special needs.  The trial court was
entitled to accept or reject this testimony.  See Scott, 926 S.W.2d at
421.





[10]
James also urges us to hold that the trial court abused its discretion because
James had at times voluntarily paid more child support than required by the
divorce decree.  But James’s voluntary payment of child support does not
necessarily mean that he was paying an amount that was consistent with the best
interests of the children or that James would continue to volunteer additional
child support.  See Kurtz v. Kurtz, 158 S.W.3d 12, 20 (Tex. App.—Houston
[14th Dist.] 2004, pet. denied).





[11]
The Order did not include the court’s statement of whether the application of
the guidelines would be unjust or inappropriate, as required by the Family Code. 
But James complains only that the court’s findings should have set out
specifically the amounts of the children’s proven needs, which is the only part
of the Order at issue.  Thus, we need not address whether the Order is
sufficient in this respect.  See Archambault v. Archambault, 846 S.W.2d
359, 361 (Tex. App.—Houston [14th Dist.] 1992, no writ) (noting, in context of
summary judgment appeal, “issues not presented cannot be considered on
appeal”).





[12]
This finding is sufficient, as the trial court explained that it could not
ascertain the amount of Sandra’s net resources.  See Roosth, 889 S.W.2d
at 453.





[13]
The case that James cites in support of his argument that the court’s findings
are insufficient is inapposite because in that case the trial court did not
make any findings of fact or conclusions of law, despite two requests for
them.  See In re T.N.H., No. 2-06-074-CV, 2007 WL 495162, at *2 (Tex.
App.—Fort Worth Feb. 15, 2007, no pet.) (mem. op.).  





[14]
We note that if James is confused about the effect of the Order, he may file a
motion at any time asking the trial court, as a court of continuing
jurisdiction over matters involving the children, to clarify whether these
provisions remain intact.  See Tex. Fam. Code §§ 155.001, 157.421.